### Samuel Homans *versus* Allen Lambard.

Where the question on trial between the parties is, whether a promise by the defendant was an original or a collateral one, the jury may rightfully be instructed, that if the goods were furnished on the credit of the defendant, and not on the credit of the third person, the promise was original, and not collateral; and that a presentment of the bill of the goods to such third person for payment, did not impair the plaintiff's right against the defendant, who would thereby have been relieved, if the application had been successful.

Although it is the duty of the Court to put a construction on the language of a contract, when it has already been ascertained what the terms of it are; yet when many facts and several conversations at different times, testified to by several witnesses, are in evidence to prove the contract, and it is matter of controversy what the terms of it are, the question should be put to the jury as matter for their determination, with appropriate instructions as to the law.

Assumpsit for two parcels of hemlock timber, delivered in July, 1838. It appeared that the timber in question, went to the use of the Kennebec Dam Company, Daniel Williams being at that time their treasurer, Amasa Hewins their agent for the purchase of timber, and the defendant their agent for hiring, directing and paying laborers. It appeared, that what was called *dam paper*, was written evidence of debt against the company, signed by their treasurer. For the plaintiff, Amasa Hewins testified, that being at the time agent of the company for the purchase of timber, early in July, 1838, he applied to the plaintiff, to purchase from him the first parcel of timber; that the plaintiff said, that he would not know the

dam company in the business, or sell to them, but that if Daniel Williams would pass his word, as an individual, that he should have the money at the time it was due from the plaintiff to Mr Southwick, of whom he bought the first parcel, and a part of the second, which would be in ninety days, Hewins might have the timber. The witness further testified, that upon communicating these terms to Mr. Williams, he agreed to do as the plaintiff required. That not far from a month after, he had occasion to apply to the plaintiff for the second parcel, and he consented to sell it upon the same terms as he had before prescribed. That subsequently the witness stated to Williams, in the presence of the defendant, that the plaintiff would sell upon the same terms as before, but he had no recollection of then stating, that the plaintiff would have nothing to do with the dam company, and thought he did not. That Williams thereupon stated, that there was the agent, Lambard, and he must see to it. He then turned to the defendant, and repeated to him what the former bargain was. That the defendant then inquired, what security does the plaintiff want? The witness replied, that which will produce the money in ninety days. That the defendant then said, he had the plaintiff's note, does he want any better security than his own paper? The witness said, that probably would be satisfactory. Thereupon the defendant said, I will exchange the plaintiff's paper for dam paper, and should be glad to do so. The witness communicated this conversation to the plaintiff, who said that he wanted no better security than his own paper, and that the surveyor agreed on might survey the timber, which was accordingly done in the presence of Hewins, but not of the plaintiff; and the surveyor made out the survey bill, as he did of the former parcel, as from the plaintiff to the dam company, and on the presentment of these bills to the treasurer, by the surveyor, he paid him for surveying. These bills were produced by the treasurer at the trial.

Upon this evidence the plaintiff claimed to charge the defendant for the second parcel, conceding that he was not liable for the first. It was admitted that the plaintiff, in the fall of

1839, by his agent, called upon the defendant and requested him to indorse the amount due for the timber on plaintiff's notes, but the defendant refused to do it.

It was proved by the defendant that he held, at the time, paper against the plaintiff, in which others were also interested, but upon which his claim against the plaintiff exceeded the value of the timber, and that the same paper had been put in suit, and the amount due thereon collected and paid to the defendant, and that each of the notes much exceeded the value of the timber. The survey bill was from the plaintiff to the Kennebec Dam Company.

And Daniel Williams testified that he had no doubt the survey bill was brought to him by the plaintiff, although he did not recollect the fact. That he should have given him dam paper therefor, if he had desired it. He further said the plaintiff had said to him, he indorsed for him, a note which the plaintiff said he procured to be discounted at the Augusta Bank, but for what amount, whether for the first parcel or more the plaintiff did not state. It appeared that during that season, from time to time, the defendant received from the treasurer large sums of money designed and used for the payment of the laborers. It appeared the dam company did not at that time pay their paper promptly, that their credit had become doubtful, and they had previously mortgaged a considerable part of their personal property. The following year, 1839, the dam was so seriously injured, that the company became deeply insolvent.

Daniel Williams further testified that they were not sued in the season of 1838, and that if the plaintiff had that year furnished the defendant with dam paper for the timber, he thought the defendant might have protected himself. But in fact he had not collected or secured the amount of a prior debt due himself.

The counsel for the defendant contended that the promise proved was collateral, and, there being no memorandum in writing, void by the statute of frauds. As evidence of this they relied upon the form of the general bill and the demand

made by the plaintiff upon the treasurer for payment, but principally upon the terms of the proposition, proved, as he contended, to have been made by the defendant, which his counsel insisted necessarily implied, that the sale was made to the company, and that the plaintiff was first to receive of them the usual evidence of debt. Upon this ground of defence, WHITMAN C. J. then presiding, instructed the jury, that if they were satisfied the timber was furnished on the credit of the defendant, and not on the credit of the dam company, the promise was original and not collateral; and that the presentment of the bill to the treasurer, and the demand on him for payment, did not impair the plaintiff's rights against the defendant, who would have been thereby relieved, if the application had been successful.

There being no proof that the plaintiff had procured dam paper for the timber, or had offered such paper to the defendant to be exchanged for or indorsed on the plaintiff's own paper, the counsel for the defendant requested the presiding Judge to instruct the jury, that the action was not maintained. Upon this point, the Judge instructed the jury, that if they believed the understanding of the parties to have been, that the plaintiff should procure what was called dam paper, and present it to the defendant, to be exchanged for his (the plaintiff's) notes, the action was not sustained. But that they would consider whether it was reasonable for them to believe such to have been, in effect, the agreement between the parties. The contracts were to be interpreted according to the understanding of the parties thereto; and that if the plaintiff did not understand, at the time, that he was first to procure dam paper and present it to be exchanged, and the defendant was aware of this, it could not be considered to be the agreement that he should do so; that they would take into view all the circumstances in evidence in the case, and draw their own conclusions from them; that the defendant, if he had paid the plaintiff's bill for the second parcel of timber for the use of the dam company, would have equally as good ground of claim against the company, as if he had obtained dam paper; and

that the procuring of such paper might have been but a useless ceremony. And if they were satisfied that the original credit was given to the defendant, and that it was not agreed between the parties that the plaintiff should first procure what was called dam paper, and present it to the defendant, to be exchanged as aforesaid, the plaintiff might be considered as having made out his case.

·The jury thereupon returned their verdict for the plaintiff, and the defendant excepted to the foregoing rulings and instructions.

*N. Weston,* for the defendant, argued in support of the grounds of defence taken by him at the trial; and contended, that the rulings and instructions were erroneous. On the point, that the promise was collateral, he cited 2 Stark. Ev. 595, and cases there cited; *Matson* v. *Wharam,* 2 T. R. 80.

*Bradbury,* for the plaintiff, said that the question, whether the promise was original, or collateral, was one of fact, and not of law. The true question is, to whom was the credit given? 1 Stark. Ev. 407. It was not a mere interpretation of language, but an inference to be drawn from proof of many facts, and credit to be given to several witnesses. This is the exclusive province of the jury.

The contract no more required, that the plaintiff should procure *dam-paper,* and present it to the defendant, than that the defendant should procure it, and present it to the plaintiff. Besides, the request of the counsel for the defendant was substantially complied with.

The opinion of the Court was afterwards prepared by

TENNEY J. — The timber, the value of which is claimed in this action, unquestionably went to the use of the Kennebec Dam Company, but the promise attempted to be enforced, is alleged to have been original and not collateral; and such the jury have found it to be. The verdict is attempted to be set aside on the ground of misdirection of the Judge in matter of law. He instructed the jury, " that if they were satisfied the timber was furnished on the credit of the defendant, and

not on the credit of the dam company, the promise, was original and not collateral ; and that the presentment of the bill to the treasurer, and the demand on him for payment, did not impair the plaintiff's rights against the defendant, who would have been relieved, if the application had been successful." We do not perceive how this instruction can be regarded as incorrect, standing unconnected with the facts. But in the argument it is insisted, that the defendant's liability depends upon a construction, which the Court was bound to put upon certain language, which it is testified he used at the time of negotiation, viz. " I will exchange the plaintiff's paper for dam paper and will be glad to do it;" and that therefore the matter was improperly left to the jury.

If the liability of the defendant depended entirely upon a written promise, expressed in these words, it would have been the duty of the Court to have put upon it a construction, and that construction would have been conclusive, if correct. But there was other conversation between the parties ; also between the plaintiff and other persons in the presence of the defendant, which had a tendency to manifest to the defendant, the views entertained by the plaintiff on the subject of the sale of the timber. Other facts touching the matter were in evidence, all of which might have had an important influence in satisfying the jury of the true character of the transaction. It was for them alone to judge from the evidence, what was said and done, and then to determine therefrom the intention of the parties. It would have been a manifest invasion of their rights, for the Court to select a particular portion of the evidence, which the jury might, or might not believe, and, as matter of law, inform them, that their verdict must depend upon the construction, which the Judge should give to that, independent of other facts in the case. The meaning of the parties was to be gathered from all the evidence before them, and this matter of fact was submitted to them on testimony, to which no objection was made.

The presentation of the bill by the plaintiff to the treasurer of the company, if it were made, was by no means conclusive

evidence, that the promise was collateral, but was for the jury to consider ; it was a material fact for them, but not one from which any legal inference was to be drawn.

The defendant's counsel requested, that the Judge would instruct the jury, as matter of law, that as the plaintiff had not obtained dam paper and presented it to the defendant to be exchanged or indorsed, the action was not maintained. We think he was correct in submitting the question of the intention of the parties, on this branch of the case, to the jury. The request for this instruction must have been upon the hypothesis, that it was proved, that the payment was to have been made by the defendant in the exchange of dam paper for that of the plaintiff. That very fact was in issue, and how the jury would settle it, could not be foreseen. The jury were properly left to settle the question of intention ; and if the defendant had performed all that he was bound to do, he would be discharged ; but if otherwise, the plaintiff was entitled to recover.

*Judgment on the verdict.*